UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| URSULA KEEP, individually and on behalf of all others similarly situated, | Case No. 1:16-cv-9133 |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| WELSPUN INDIA LTD., and WELSPUN USA INC., | |
| *Defendants*. | |

Plaintiff Ursula Keep, individually and on behalf of all others similarly situated, by and though counsel, brings this class action against Welspun India LTD. and Welspun USA Inc. (collectively "Defendants") as follows:

## I. <u>INTRODUCTION</u>

1. This is a class action lawsuit brought by Plaintiff on behalf herself and all similarly situated persons who purchased sheets from Defendants that were labeled Egyptian cotton. Unbeknownst to Plaintiff and the class, the "Egyptian Cotton" sheets marketed and sold by Defendants are not Egyptian cotton

2. Defendants are in the business of manufacturing, marketing and distributing bedding and linen products, including the fake Egyptian Cotton sheets.

3. Plaintiff and the Class purchased Defendants Egyptian Cotton sheets, and relied on Defendants' representations and warranties when purchasing the sheets.

4. Had Plaintiff and the Class known that the Egyptian Cotton sheets were not Egyptian Cotton, they would not have purchased Defendants' them.

1

5. Plaintiff and the Class suffered damages as a direct and proximate result of Defendants' misrepresentations and omissions. Plaintiff and the Class have lost the purchase cost of a product they would have not otherwise bought.

## II. **PARTIES**

6. Plaintiff Ursula Keep resides in Fort Myers, Florida. In May 2016, Plaintiff purchased Defendants' Perfect Touch California king sheet set that was advertised as 100% Egyptian Cotton from Bed Bath & Beyond. Plaintiff relied on Defendants' statements on the sheets when deciding to purchase them. Had Defendants disclosed the sheets were not 100% Egyptian Cotton, Plaintiff would not have purchased them.

7. Defendant Welspun India LTD. is a corporation formed under the laws of India with its principal place of business located in India.

8. Defendant Welspun USA, Inc. is a corporation formed under the laws of Delaware with its principal place of business located in New York, New York.

## III. **JURISDICTION AND VENUE**

9. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00) and is a class action in which Class members are citizens of states different from Defendant.

10. This Court has personal jurisdiction over Defendants because they are authorized to do business, and are conducting business, in this District.

11. Venue properly lies in this District pursuant 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to this claim occurred this District. Venue is also proper because Defendants are authorized to conduct business in Florida, have

intentionally availed itself of its laws and markets, and are subject to personal jurisdiction in this District.

## IV. FACTUAL BACKGROUND

12. Defendants developed, manufacture, advertise and sell Egyptian Cotton sheets.

13. As the parent company, Welspun India LTD. is responsible for the manufacturing of the Egyptian Cotton sheets. Through Welspun USA, Defendants sell the Egyptian Cotton sheets through online retailers such as Amazon as well as through traditional brick-and-mortar stores such as Bed Bath & Beyond, Target and Walmart.

14. Defendants sell their sheets through a variety of brands, including: Better Homes and Gardens, Crowning Touch, Jennifer Lopez, and Fieldcrest. Upon information and belief, each of these brands include labels that indicate they are sold and/or distributed by Welspun USA.

15. Each of these brands are marketed and sold as being 100% Egyptian Cotton. Real Egyptian Cotton is a highly coveted, luxurious fabric that is in high demand from consumers. As a result, Egyptian Cotton commands a premium price.

16. Recently, there has been a severe shortage of authentic Egyptian Cotton. Indeed, as Reuters reported, Egypt's cotton output has been declining for the past decade after farmers failed to adapt to shifting consumer demand for mass-produced items made from short- or medium-staple fiber.

17. In an effort to take advantage of the demand for Egyptian Cotton, many companies have begun producing "blends" where the Egyptian Cotton is combined with a different type of cotton and marketed and sold as authentic Egyptian Cotton without disclosing the same to the consumer. As a result, companies are reaping enormous profits from selling

fake Egyptian Cotton at authentic Egyptian Cotton price points.

18. In August 2016, Target announced the results of an internal investigation into the quality of Defendants' Egyptian Cotton sheets. Target concluded that 750,000 sheets and pillowcases labeled as Egyptian Cotton were actually made from another type of Cotton. As a result, Target pulled all of Defendants' products from its stores, terminated its relationship with Defendants, and notified its customers that it would issue them a refund for any purchases made. Target was Welspun's second largest customer.

19. In response to Target's decision, Defendants admitted the Egyptian Cotton sheets were fake. It stated: "Without any ambiguity the fault is on our side and so it is, let's say, the error is from our side so I guess we have to take responsibility for it."[1]

20. In November 2016, following an independent audit of Welspun's Perfect Touch and Crowning Touch sheets, Bed Bath & Beyond announced that it could not guarantee that the fibers were actually Egyptian cotton and discontinued sales.

21. Despite Defendants' acknowledgement that its Egyptian Cotton sheets are fake, it has not offered refunds to consumers who purchased them and has not issued corrected advertisements disclosing the Egyptian Cotton sheets are fake.

22. Plaintiff and the class reasonably relied on Defendants' advertisements and product labels that stated their sheets were 100% Egyptian Cotton.

23. Had Defendants disclosed that their sheets were not 100% Egyptian Cotton, Plaintiff and the class would not have purchased the sheets.

---

[1] *See* http://www.wsj.com/articles/indian-company-admits-error-after-target-cuts-ties-over-egyptian-cotton-dispute-1472127051 (last visited Nov. 22, 2016).

## V. CLASS ACTION ALLEGATIONS

24. <u>Class Definition</u>.  Plaintiff seeks to bring the claims below as a class action, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and all others similarly situated.  The proposed Class ("the Class") is defined as:

> All individuals who have purchased sheets manufactured, distributed, and/or sold by Defendants as 100% Egyptian Cotton.

25. Excluded from the Class are the Judges assigned to this case and Defendants, including employees, officers, directors, and affiliates.

26. <u>Numerosity</u>.  The Class is so numerous that joinder of all members is impracticable.  Defendants sell their Egyptian Cotton sheets across the nation and in some of the largest retail store chains in the United States.  Upon information and belief, the number of persons who are members of the Class is in the hundreds of thousands, if not more.

27. <u>Commonality</u>.  All actions and inactions by the Defendants at issue here are similarly common.  A determination of whether Defendants falsely marketed their Egyptian Cotton sheets, or made material misrepresentations, will apply to all members of the Class.  Other questions common to the class include whether Defendants violated any applicable laws and pursued the course of conduct complained of here, whether Defendants acted intentionally or recklessly in engaging in the conduct described herein, and the extent of the appropriate measure of injunctive and declaratory relief, damages, and restitution.

28. <u>Predominance</u>. Questions of law and fact that are common to the Class predominate over individual questions because the Defendants' actions complained of herein are generally applicable to the entire Class   These legal and factual questions include, but are not limited to:

   a. Whether Egyptian Cotton sheets contain any Egyptian Cotton;

  b. Whether Defendants falsely labeled and marketed their Egyptian Cotton sheets;
  c. Whether Defendants violated Florida's consumer protection laws;
  d. Whether Defendants' misrepresentations and omissions were material; and,
  e. Whether Plaintiff and the Class suffered harm and are entitled to relief; and, if so, to what extent.

29. <u>Typicality</u>.  Plaintiff's claims are typical of the members of the Class.  Plaintiff sustained damages as a result of her reliance on Defendants' misrepresentations, omissions and unlawful conduct, as did each member of the Class.

30. <u>Adequacy of Representation</u>.  Plaintiff will fully and adequately represent and protect the interests of the Class because of the common injuries and interests of the members of the Class and the conduct of Defendants that is or was applicable to all members of the Class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.  Plaintiff has no interests that are contrary to or in conflict with those of the Class she seeks to represent.

31. <u>Superiority</u>:  A class action is superior to all other available methods for fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty in managing this action that would preclude its maintenance as a class action.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards of conduct for Defendants under the laws alleged herein.  The claims of the Class may be certified under Rule 23(b)(1), (b)(2) and/or (b)(3).  The members of the Class seek declaratory and injunctive relief but also seek sizeable monetary relief.

## VI. <u>CLAIMS FOR RELIEF</u>

### FIRST CLAIM FOR RELIEF
### Violation of the Florida Deceptive and Unfair Trade Practices Act

32. Plaintiff and the Class incorporate by reference the preceding and subsequent

paragraphs as if fully set forth herein.

33. The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202 (2).

34. Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class members the fact that their sheets were not 100% Egyptian Cotton. Defendants should have disclosed this information because they were in a superior position to know the true facts related to the type of cotton used in the sheets, and Plaintiffs and Class members could not reasonably be expected to learn or discover the nature of the cotton on their own.

35. Plaintiff and the other Class members were injured as a result of Defendants' conduct in that Plaintiff and the other Class members overpaid for their Egyptian Cotton sheets and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

### SECOND CLAIM FOR RELIEF
### Breach of Express Warranty

36. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

37. Defendants affirmed and promised Plaintiff and the class members that the Egyptian Cotton sheets were made from Egyptian Cotton. Defendants affirmations and promises created a guarantee to Plaintiffs and the class members that the Egyptian Cotton sheets are made from 100% Egyptian Cotton.

7

38. These affirmations and promises formed the basis of the bargain between Plaintiff and the class and Defendants.

39. Defendants breached their express warranty that the Products were made from Egyptian cotton by providing Plaintiffs and class members with Products that were not made from Egyptian cotton.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**

40. Plaintiff and the Class incorporate by reference the preceding and subsequent paragraphs as if fully set forth herein.

41. Defendants were unjustly enriched through their sales of the Egyptian Cotton sheets to Plaintiff and the Class.

42. Plaintiff conferred a benefit on the Defendants by purchasing the Egyptian Cotton sheets from Defendants. By receiving those purchase proceeds, Defendants knew of the benefit conferred upon them.

43. Plaintiff unknowingly overpaid for the Egyptian Cotton sheets because the sheets are not Egyptian Cotton and Defendants received and appreciated the benefit of that overpayment.

44. Defendants were therefore unjustly enriched at the expense of Plaintiff and the Class.

45. Defendants have no excuse for, or defense to, their actions.

46. Plaintiff and the Class suffered damages as a result.

**FOURTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**

47. Plaintiff and the Class incorporate by reference the preceding and subsequent paragraphs as if fully set forth herein.

48. Through the course of business as developers, marketers and sellers of the Egyptian Cotton sheets, Defendants falsely represented to Plaintiff via advertising and labeling that the sheets were 100% Egyptian Cotton.

49. Defendants made the false representation in furtherance of selling the Egyptian Cotton sheets to consumers. The claims were designed to induce consumers to purchase the Egyptian Cotton sheets.

50. Defendants' claim that the sheets were made from Egyptian Cotton was material because Egyptian Cotton sheets are luxurious and command a high price point as a result.

51. Defendants' representation was false in that the Egyptian Cotton sheets were fake and did not contain Egyptian Cotton.

52. Defendants failed to use ordinary care, and made a false representation where they knew or should have known that it was false.

53. Plaintiff believes the misrepresentation, and reasonably relied on it in choosing Defendants' sheets over other available products.

54. Plaintiff and the Class suffered damages as a result of their reliance.

### FIFTH CLAIM FOR RELIEF
### Fraudulent Inducement/Concealment

55. Plaintiff and the Class incorporate by reference the preceding and subsequent paragraphs as if fully set forth herein.

56. Defendants, through advertising and packaging, represented that their sheets were Egyptian Cotton.

57. Defendants made the representation with the intent that Plaintiff see its product as superior to other products. Defendants intended Plaintiff to rely on their representation in

choosing Defendants' sheets over a competitor's sheets.

58. Defendants' representation was false in that the Egyptian Cotton sheets were fake and did not contain Egyptian Cotton.

59. Based on its own production process, quality assurance system and customer complaints, Defendants knew their representation to be false at the time it was made.

60. Plaintiff believes the misrepresentation, and reasonably relied on it in choosing Defendants' sheets over other available products.

61. Plaintiff and the Class suffered damages as a direct result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, requests the following relief:

1. An order certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

2. An order designating Plaintiff as representative of the Class and her undersigned counsel as Class Counsel;

3. Judgment in favor of Plaintiff and the Class, and against Defendant;

4. An award to Plaintiff and the Class for damages equal to the amount of actual damages that they sustained;

5. An award to Plaintiff and the Class for attorneys' fees and costs, including interest, as allowed or required by law; and,

6. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests trial by jury of all issues triable by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: November 23, 2016 **LITE DEPALMA GREENBERG, LLC**

*/s/ Jeremy N. Nash*
Bruce D. Greenberg
Jeremy N. Nash
570 Broad Street, Suite 1201
Newark, NJ 07102
bgreenberg@litedepalma.com
jnash@litedepalma.com

**MCCUNEWRIGHT, LLP**
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
555 Lancaster Ave
Berwyn, Pennsylvania 19312
Telephone: (610) 200-0580
jgs@mccunewright.com
mds@mccunewright.com
jbk@mccunewright.com

*Counsel for Plaintiff and the putative Class*